# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JOSEPH CHIDI ANORUO,

        Plaintiff(s),

v.

ERICK K. SHINSEKI,

        Defendant(s).

2:12-CV-1190 JCM (GWF)

**ORDER**

Presently before the court is defendant Eric K. Shinseki's motion for summary judgment. (Doc. # 64). *Pro se* plaintiff Joseph Chidi Anoruo filed a response (docs. ## 100 & 101), and defendant filed a reply (doc. # 103). Plaintiff then filed a supplemental response (doc. # 104), and defendant filed an additional reply (doc. # 110).

**I.  Background**

This case revolves around a hiring process that occurred in 2011 for the position of "oncology manager" for the United States Department of Veterans Affairs' Southern Nevada Healthcare System ("VA"). Invoking Title VII of the Civil Rights Act, *pro se* plaintiff alleges that the selection of Eva Murphy rather than himself was the result of discrimination on the basis of his national origin. Plaintiff is originally from Nigeria and is now a United States citizen.

Plaintiff graduated from Howard University with a doctorate degree in pharmacy in May 2000. Plaintiff began working for the VA as a clinical pharmacist in 2003 at the VA's Southwest Clinic. In 2004, plaintiff was appointed as an alternate I.V. pharmacist. He held this position through

**James C. Mahan**
**U.S. District Judge**

1  2011, when the hiring process at issue took place.

2  Plaintiff previously filed discrimination complaints against the VA that were related to a
3  2007 decision to shut down an infectious disease clinic that was run by plaintiff. This action is still
4  pending before the Ninth Circuit.

5  Eva Murphy is a naturalized U.S. citizen who was born in Hungary. Ms. Murphy graduated
6  from Idaho State University in 1989 with a bachelor of science degree in pharmacy. She began
7  working for the VA as a pharmacist in 1992. In 1996, she began working exclusively in IV infusions
8  and oncology. In 2003, she transferred to the Southwest Clinic, where she worked alongside plaintiff
9  until 2011. Throughout the entirety of her work with the Southwest Clinic, Ms. Murphy was the
10  primary oncology pharmacist, and plaintiff worked as an "alternate" to Ms. Murphy in oncology
11  pharmacy.

12  On January 8, 2011, the VA posted an announcement that it was seeking applicants for the
13  position of oncology manager. Plaintiff, Ms. Murphy, and another of their co-workers, Mary Ann
14  Gusakov-Mason, were among the applicants for this position.

15  Ultimately, Josephine Tefferi, the associate chief of outpatient clinical pharmacy programs,
16  selected Ms. Murphy for the position without conducting any interviews. She later recounted that
17  the reasons for selecting Ms. Murphy rather than plaintiff were that Ms. Murphy had worked for the
18  V.A. far longer (nineteen years versus eight years), that she had more experience in I.V./oncology
19  pharmacy, as Ms. Murphy had worked primarily in this field since 1996 whereas plaintiff began in
20  2003, and the fact that plaintiff's only position in oncology pharmacy had been to serve as an
21  alternate to Ms. Murphy.

22  Plaintiff first pursued this action through the Equal Employment Opportunity Commission's
23  (EEOC) administrative process. On April 12, 2012, plaintiff was issued a right to sue notice by the
24  EEOC.

25  Plaintiff now alleges that defendant violated Title VII because plaintiff was not hired for the
26  position of oncology manager on the basis of his national origin and, alternatively, that the choice
27  not to hire him was in retaliation for plaintiff's past protected Title VII activities.

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

James C. Mahan
U.S. District Judge

- 3 -

1   In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Analysis**

As an initial matter, the court acknowledges that plaintiff is *pro se*, and therefore his filings should be held to a less stringent standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and . . . must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted).

*A.   Title VII Discrimination*

1.   Prima Facie Case

Title VII claims are to be analyzed through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). "Establishing a prima facie Title VII case in response to a motion for summary judgment requires only minimal proof and does not even need to rise to the level of a preponderance of the evidence." *Palmer v. Pioneer Assocs, Ltd.*, 338 F.3d 981, 984 (9th Cir. 2003) (internal citations and quotations omitted).

To establish a prima facie case, the plaintiff must present evidence showing: (1) he is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he suffered

**James C. Mahan**
**U.S. District Judge**

- 4 -

an adverse employment action; and (4) that similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g.*, *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011).

In this case, defendant concedes that plaintiff has established a prima facie case, because an individual outside of his protected class was hired for the oncology manager position.

### 2. Legitimate, Nondiscriminatory Reasons

"If plaintiff[] establish[es] a prima facie case, the burden of production, not of persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155 (internal citations and quotations omitted). "If defendant meets this burden, plaintiff[] must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the adverse action] are mere pretext for unlawful discrimination." *Id.*

Here, defendant has provided significant evidence demonstrating that it selected Ms. Murphy for the position for perfectly legitimate reasons. Defendant referred to the fact that Ms. Murphy had worked for the VA for nearly eleven years longer than plaintiff. Also defendant noted that Ms. Murphy had worked for nearly fifteen years as a specialist in I.V./oncology pharmacy, and plaintiff's only role in oncology was to serve as an alternate to Ms. Murphy. Therefore, defendant has presented evidence demonstrating a legitimate, nondiscriminatory reason for its hiring decision.

### 3. Pretext

"A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1171 (9th Cir. 2007) (internal citations, quotations, and alterations omitted). "All the evidence as to pretext–whether direct or indirect–is to be considered cumulatively." *Id.*

In response to the VA's explanation for its hiring decision, plaintiff delivers a lengthy narrative as to why he believes he was more deserving of the position than Ms. Murphy. Plaintiff

James C. Mahan
U.S. District Judge

- 5 -

refers to the fact that he has doctorate degree in pharmacy while plaintiff merely has a bachelor of science degree. Plaintiff also states that the VA did not give enough consideration to his employment experience outside of his direct work for the VA. He also states that Ms. Murphy had rarely stepped up to perform the clinical aspects of being an oncological pharmacist, while plaintiff had frequently done so.

Though the evidence provided by plaintiff clearly demonstrates that he thinks the wrong criteria were used in the hiring process, none of the evidence he presents contains any inkling that the VA's decision to hire Ms. Murphy was a result of unlawful discrimination. Indeed, the mere fact that an employer uses inadequate criteria to determine the best candidate does not mean that the employer is racist. *See Coleman v. Quaker Oats, Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000) ("That [defendant] made unwise business judgments or that it used a faulty evaluation system does not support the inference that [defendant] discriminated on the basis of age.").

From plaintiff's extensive analysis stating that his education and experience better qualified him for the position than Ms. Murphy, it is clear that plaintiff seeks a general review of the efficiency of the VA's process to determine that the VA made the wrong hiring decision–this is not the role of the court. *See Green v. Maricopa County Cmty. Coll. Sch. Dist.*, 265 F. Supp. 2d 1110, 1128 (D. Ariz. 2003) ("We do not sit as a super personnel department that reexamines an entity's business decision and reviews the propriety of the decision.")

Accordingly, because plaintiff has provided no evidence indicating that the defendant's proffered explanation for its hiring decision is pretextual, the court will grant summary judgment in favor of defendant on this claim.

   B.  Title VII Retaliation

Federal law holds that "it is unlawful to retaliate against an employee because [he] has taken action to enforce rights protected under Title VII." *Miller v. Fairchild*, 797 F.2d 727, 730 (9th Cir. 1986). "To succeed in a retaliation claim, the plaintiff must demonstrate (1) that [he] was engaging in protected activity, (2) that [he] suffered an adverse employment decision, and (3) that there was a causal link between [his] activity and the employment decision." *Hashimoto v. Dalton*, 118 F.3d

James C. Mahan
U.S. District Judge

- 6 -

1  671, 679 (9th Cir. 1997).

2      Similar to the shortcomings in his other Title VII claim, plaintiff's evidence only supports
3  the principle that the VA made the wrong hiring decision by overvaluing the length of Ms. Murphy's
4  work history and the quality of her I.V./oncology experience. This evidence does not indicate any
5  causal link between plaintiff's pending discrimination claim and the decision by the VA not to hire
6  plaintiff as an oncology manger. Accordingly, the court will grant summary judgment in favor of
7  defendant on this claim.

8      Accordingly,

9      IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for
10 summary judgment (doc. # 64) be, and the same hereby is, GRANTED. The clerk shall enter
11 judgment accordingly and close the case.

12     DATED February 18, 2014.

**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 7 -